E-filing

1    <u>**PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**</u>

2    Name __Hudson_____Robert_____S._____
              (Last)                (First)            (Initial)

3

Prisoner Number __C-89346__

4

Institutional Address __P.O. Box 689, G328L, Soledad, CA 93960-0689__

5

6

7    **UNITED STATES DISTRICT COURT**
     **NORTHERN DISTRICT OF CALIFORNIA**

8    Robert Steven Hudson
     (Enter the full name of plaintiff in this action.)

9                                                    Case No. _____
                                                     (To be provided by the clerk of court)
10                 vs.

     Ben Curry, Warden CTF                           **PETITION FOR A WRIT**
11                                                   **OF HABEAS CORPUS**
     Board of Parole Hearings
12
     Arnold Schwarzenegger, Governor
13
     Real Parties In Interest
14   (Enter the full name of respondent(s) or jailor in this action)

15

16                    <u>Read Comments Carefully Before Filling In</u>

17   <u>When and Where to File</u>

18        You should file in the Northern District if you were convicted and sentenced in one of these

19   counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20   San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21   this district if you are challenging the manner in which your sentence is being executed, such as loss of

22   good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23        If you are challenging your conviction or sentence and you were <u>not</u> convicted and sentenced in

24   one of the above-named fifteen counties, your petition will likely be transferred to the United States

25   District Court for the district in which the state court that convicted and sentenced you is located. If

26   you are challenging the execution of your sentence and you are not in prison in one of these counties,

27   your petition will likely be transferred to the district court for the district that includes the institution

28   where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS          - 1 -

1  <u>Who to Name as Respondent</u>

2      You must name the person in whose actual custody you are. This usually means the Warden or

3  jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced. These are not proper

5  respondents.

6      If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  <u>A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE</u>

11      1. What sentence are you challenging in this petition?

12          (a)    Name and location of court that imposed sentence (for example; Alameda

13              County Superior Court, Oakland):

14            Los Angeles County Superior Court, Pomona California

15              Court                           Location

16          (b)    Case number, if known __A531525

17          (c)    Date and terms of sentence _7/10/1984, 25 Years-to Life_
            Note: In continuous custody since 2/17/1984.

18          (d)    Are you now in custody serving this term? (Custody means being in jail, on

19              parole or probation, etc.)        Yes _X_    No _____

20              Where?

21              Name of Institution: _Correctional Training Facility_

22              Address: _P.O. Box 689, Soledad, CA 93960-0689_

23      2. For what crime were you given this sentence? (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known. If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  California Penal Code Section 187, First Degree Murder.

27  _____

28  _____

PET. FOR WRIT OF HAB. CORPUS     - 2 -

3.  Did you have any of the following?

    Arraignment:                               Yes __x__    No _____

    Preliminary Hearing:                     Yes __X__    No _____

    Motion to Suppress:                    Yes __X__    No _____

4.  How did you plead?

    Guilty __X__    Not Guilty _____    Nolo Contendere _____

    Any other plea (specify) _Plea agreement to First Degree Murder all other allegations dismissed on plea of guilty._

5.  If you went to trial, what kind of trial did you have?

    Jury _____    Judge alone_____    Judge alone on a transcript _____

6.  Did you testify at your trial?               Yes _____    No _____

7.  Did you have an attorney at the following proceedings:

    (a)    Arraignment                Yes __x__    No _____

    (b)    Preliminary hearing        Yes __X__    No _____

    (c)    Time of plea               Yes __X__    No _____

    (d)    Trial                        Yes _____    No _____

    (e)    Sentencing                 Yes __X__    No _____

    (f)    Appeal                    Yes _____    No _____

    (g)    Other post-conviction proceeding    Yes _____    No _____

8.  Did you appeal your conviction?           Yes _____    No __X__

    (a)    If you did, to what court(s) did you appeal?

                Court of Appeal               Yes _____    No _____

                Year: _____    Result:_____

                Supreme Court of California       Yes _____    No _____

                Year: _____    Result:_____

                Any other court              Yes _____    No _____

                Year: _____    Result:_____

    (b)    If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS    - 3 -

1              petition?                      Yes _____     No_____

2      (c)    Was there an opinion?             Yes _____     No_____

3      (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                                        Yes _____     No_____

5             If you did, give the name of the court and the result:

6

7

8 9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9 this conviction in any court, state or federal?           Yes__X_    No_____

10         [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11 challenged the same conviction you are challenging now and if that petition was denied or dismissed

12 with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13 for an order authorizing the district court to consider this petition. You may not file a second or

14 subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15 U.S.C. §§ 2244(b).]   

Note: All previous writs of habeas corpus challenging con-
viction are moot. Information hereinafter regards exhaustion
of writ of habeas corpus challenging 12-15-05 Board denial.

16      (a)    If you sought relief in any proceeding other than an appeal, answer the following

17            questions for each proceeding. Attach extra paper if you need more space.

18        I.    Name of Court: Los Angeles County Superior Court

19             Type of Proceeding: Petition for Writ of Habeas Corpus

20             Grounds raised (Be brief but specific):

21             a. Petitioner filed 3 Grounds exhausting the 2 Grounds

22             b. filed herein. See Petition herein at page 8 and page 13.

23             c.

24             d.

25             Result: Denied (Exhibit J)       Date of Result: 8/07/07

26       II.    Name of Court: Calif. Ct. of Appeal, 2nd App. District

27             Type of Proceeding: Petition for Writ of Habeas Corpus

28             Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS       - 4 -

1        a. Petitioner filed 3 Grounds exhausting the 2 Grounds

2        b. filed herein.

3        c.

4        d.

5        Result: Denied (Exhibit K)   Date of Result: 9/25/07

6    III. Name of Court: California Supreme Court

7       Type of Proceeding: Petition for Review

8       Grounds raised (Be brief but specific):

9        a. Petitioner filed 3 Grounds exhausting the 2 Grounds

10       b. filed herein.

11       c.

12       d.

13       Result: Denied (Exhibit L)   Date of Result: 11/28/07

14    IV. Name of Court:

15       Type of Proceeding:

16       Grounds raised (Be brief but specific):

17        a.

18        b.

19        c.

20        d.

21       Result:     Date of Result:

22  (b) Is any petition, appeal or other post-conviction proceeding now pending in any court?

23            Yes _X_  No____

24    Name and location of court: Northern District Court, Hudson v. Curry
(C-06-3716 SI); and 9th Cir., Hudson v. Solis (05-17431).

25 B. GROUNDS FOR RELIEF

26   State briefly every reason that you believe you are being confined unlawfully. Give facts to

27 support each claim. For example, what legal right or privilege were you denied? What happened?

28 Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS  - 5 -

1   need more space. Answer the same questions for each claim.

2       [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3   petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4   499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]
        THE BOARD OF PAROLE HEARINGS DEPRIVED PETITIONER OF HIS FEDERALLY PROTECTED

5   Claim One: LIBERTY INTEREST AND VIOLATED HIS 5TH AND 14TH AMENDMENT CONSTITUTIONAL
        RIGHT TO DUE PROCESS BY DENYING HIM PAROLE FOR THE FIFTH TIME BASED ON THE UNCHANGING

6   FACTS OF HIS OFFENSE AND PRIOR RECORD, GIVEN HIS EXEMPLARY PRISON RECORD.

7   Supporting Facts: See Petition for Writ of Habeas Corpus pages 8-13 and

8   Memorandum of Points and Authorities at pages 15-19 attached.

9

10          PETITIONER'S PLEA AGREEMENT WAS RENDERED CONSTITUTIONALLY INVALID WHEN THE

11  Claim Two: BOARD AND THE DISTRICT ATTORNEY ACTED TO ILLEGALLY WITHHOLD HIS RECIPROCAL
        BENEFIT OF LESSENED PUNISHMENT BY VIOLATING HIS 5TH AND 14TH AMENDMENT RIGHT TO DUE

12  PROCESS.

13  Supporting Facts: See Petition for Writ of Habeas Corpus pages 13-14 and

14  Memorandum of Points and Authorities at pages 19-21 attached.

15

16

17  Claim Three:

18

19  Supporting Facts:

20

21

22

23  If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25      All 2 Grounds raised herein have been fully and timely exhausted in

26      state court(s) and are ripe for federal adjudication.

27

28

1    List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning
         Greenholtz 442 U.S. 1; Allen 542 U.S. 368; Hill 472 U.S. 445;
3    of these cases: McQuillion 306 F.3d 895; Biggs 334 F.3d 910; Irons v. Carey 479
     F.3d 658; Rosenkrantz v. Marshall 444 F.Supp.2d 1063; Martin v. Marshall 431 F.Supp2d 1038;
4    Sanchez v. Kane 444 F.Supp.2d 1049; Willis v. Kane 485 F.Supp.2d 1126; In re Ramirez 94 Cal.App4th
     549; In re Rosenkrantz 29 Cal.4th 616; In re Dannenberg 35 Cal.4th 1061; In re Scott 119 Cal.App.4th
5    871 & 133 Cal.App.4th 573; In re E. Smith 114 Cal.App.4th 343; In re M. Smith 109 Cal.App.4th 489;
     In re Lee 143 Cal.App.4th 1400, In re Elkins 144 Cal.App.4th 475; In re Weider 145 Cal.App.4th 570;
6    In re Lawrence 150 Cal.App.4th 1511; Hayward v. Marshall (9th Cir. 2008) Lexis U.S. App.40; etc....

7    Do you have an attorney for this petition?                    Yes_____    No_X___

8    If you do, give the name and address of your attorney:

9    _____

10    WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11   this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13   Executed on _MARCH 4th, 2008_              Robert Steven Newton

14              Date                                    Signature of Petitioner

15

16

17

18

19

20   (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB: CORPUS          - 7 -

1

## GROUND ONE

2

**THE BOARD OF PAROLE HEARINGS DEPRIVED PETITIONER OF HIS FEDERALLY PROTECTED LIBERTY INTEREST AND VIOLATED HIS 5TH AND 14TH AMENDMENT CONSTITUTIONAL RIGHT TO DUE PROCESS BY DENYING HIM PAROLE FOR THE FIFTH TIME BASED ON THE UNCHANGING FACTS OF HIS OFFENSE AND PRIOR RECORD, GIVEN HIS EXEMPLARY PRISON RECORD.**

3

4

5

## INTRODUCTION

6

This case arises out of the fifth denial of parole to Petitioner convicted (by plea agreement) in

7

1984 of a 25 year to life first degree murder, who has accepted responsibility and continually expresses

8

remorse for his acts throughout his 22+ years of disciplinary free imprisonment; during which time he

9

repeatedly participated in self-help and therapy groups, upgraded educationally earning an AA degree,

10

completed the CDCR Vocational Mechanical Drawing and Information Technologies (Data Processing)

11

programs, earned repeated high marks and laudatory chronos for his prison job performance and

12

numerous volunteer efforts, and received Counselor and Psychological evaluations which recognize that

13

he is rehabilitated and ready for release. Even a Board commissioner noted during his hearing that

14

Petitioner's prison performance has always been characterized as "exemplary." Twenty two years of

15

exemplary prison programming which has rendered nil the predictive value of his first degree murder

16

factors and prior history reducing those acts to <u>less than</u> some (reliable and relevant) evidence

17

supporting a finding that he currently would be a risk to public safety if released.

18

## STATEMENT OF THE CASE

19

1.   On December 15, 2005, Petitioner, whose MEPD was July 17, 1999, appeared before the

20

Board of Parole Hearings (hereinafter Board or BPH) for his fifth parole hearing and was denied parole

21

for a two (2) year period. (See Exhibit A, Petitioner's Board Hearing Transcript.)

22

.   2.   In 1984 Petitioner was arrested and charged with participation in the murder of one of his

23

crime partners following a dispute over the conduct of their criminal enterprise. Petitioner accepted the

24

District Attorney's offer to plead guilty to the first-degree murder and the alleged special circumstance

25

of robbery, and a separate charge of robbery, were dismissed by the trial court on motion of the District

26

Attorney. The prosecution requested no special findings, and there were no admissions of any facts

27

beyond the conviction by the Petitioner. No factual findings were made by the trial court regarding the

28

circumstances of the crime. Petitioner received a term of 25 years to life for the first degree type murder.

3.  Due process requires the Board determine if the severity of past factors still demonstrate a prisoner is <u>currently a threat to public safety</u>, (in this case after 22 years of exemplary programming) and provide evidence of that nexus and demonstrate the predictive connection. If they cannot, as in this case, the prisoner must be found parole suitable. (<u>In re Lee</u> (2006) 143 Cal.App.4th 1400, 1408, adapted by <u>Hayward v. Marshall</u> (9th Cir. 2008) 2008 Lexis U.S. App. 40, *18, <u>In re Lawrence</u> (2007) 150 Cal.App.4th 1511, 1540-1544.[1])

4.  Petitioner's prior criminal history (consisting solely of conviction for marijuana possession) does not satisfy the Board's criteria such that it can provide a 15 CCR §2402(c)(2) circumstance supporting a parole denial decision. Exhibit A, pp. 16-17, 63-65.

5.  Since his arrest over 22 years ago, Petitioner has remained disciplinary, crime and violence free (Exhibit A. p.54), earned an Associate of Arts (A.A.) in General Education (Suma Cum Laude), completed a Federal Emergency Management Agency (FEMA) 28 course study program, completed the CDCR Vocational Information Technologies (Data Processing) Program and the CDCR Vocational Mechanical Drafting Program. He has also worked in various CDCR clerical positions, including Account Services Clerk/Technician, College Coordinator Clerk, Administrative Clerk/Computer Technician, Assignment Lieutenant's Clerk, Custody Clerk, Legal Clerk, and Education Clerk, and he has received numerous laudatory chronos for his performance. Exhibit A, pp. 36-54, Exhibit H. During his imprisonment Petitioner has also repeatedly participated in therapy and attended self-help groups, including attendance at Alcoholics/Narcotics Anonymous, Alternative to Violence Program (Beginning & Advanced), Life Skills Group Therapy, One on One Individual Psychotherapy, Rabbinical Religious

---

[1] Petitioner is aware the State supreme court granted review in <u>In re Lawrence</u>, Case No, S154018, on September 19, 2007, to answer questions, "to what extent should the board of Parole Hearings, under Penal Code section 3041, ...consider the prisoner's current dangerousness, and at what point, if any, is the gravity of the commitment offense and prior criminality insufficient to deny parole when prisoner appears otherwise rehabilitated." However, Petitioner also notes for this Court's consideration that the same State Supreme Court lifted the stay, releasing petitioner Lawrence. A standard of review noted in <u>In re Lee</u> (2006) 143 Cal.App.4th 1400, 1408 [review denied], and has been adopted by <u>In re Cooper</u> (2007) 153 Cal.App.4th 1043, 1059-1060; <u>In re Elkins</u> (2006) 144 Cal.App.4th 573, 595; <u>In re Weider</u> (2006) 145 Cal.App.4th 570, 584, etc. In fact, the State Supreme Court itself has granted review, or an O.S.C., and sent cases back to the lower courts, instructing they determine "why [that] Petitioner remains a danger to public safety," citing <u>In re Lee</u> 140 Cal.App.4th 1400 at

1  Counseling, Infectious Diseases Seminars, Impact Victims Awareness Program, Anger Management,

2  Family Effectiveness Training, etc.

3      6.  In addition, Petitioner has consistently volunteered his time over the last 22 years to

4  participate with various institutional functions including, Friends of the Library group (FOL), Arts In

5  Corrections (AIC) Jazz Workshop program that supports multiple functions through performance art,

6  including Education Department events, Self-Help group functions, Religious group Holiday events and

7  Recreation performances. He has additionally volunteered time for children support fundraising

8  activities such as Walk-A-Thons, Food Sales, and Children's Holiday Festivals. Exhibit A, pp. 58-60,

9  Exhibit H.

10     7.  Further, as the record shows he accepted full responsibility for his criminal acts (by pleading

11 guilty) and repeatedly expresses regret over causing the victim's death and expresses remorse for his

12 acts.

13     8.  Petitioner's prison record is such that the Board recognized "His behavior in prison… has

14 always been described as exemplary…" Exhibit A, p. 62:15-16.

15     9.  Although it was not noted, and probably not considered, by the Board during Petitioner's

16 hearing, the CDCR Custody Counselor who reviewed and assessed his prison performance and criminal

17 history found:

18     "During this period of review, Hudson continued with his active participation in
       Alcoholics Anonymous… [laudatory chronos] commend Hudson for his active
19     participation as a 'mainstay of the Arts in Corrections Program at CTF for the last ten
       years.' His contribution to such events as the Annual Inmate Family Holiday Party is
20     highly valued… CDCR 128B Laudatory chrono commends Hudson for not only being a
       charter member of the 'Friends of the Library' (FOL) Organization (promoting literacy,
21     libraries and learning), but also for being the editor of the F.O.L. Newsletter 'Bookem'
       for several years. In an interview with this writer on 6/2/05, Hudson expressed remorse
22     for the instant offense… Considering all factors, including the firm employment offer
       extended to Hudson as well as the unconditional support offered by friends, family, and
23     religious support group, this writer does not foresee problems for Hudson's readjustment
       back into society." Exhibit B, CDCR Custody Counselor prepared Life Prisoner
24     Evaluation Report incorporate by reference.

25     10. The Board did review the CDCR Psychological Staff Evaluation of Petitioner, noting that the

26 Psychologist found:

27

28 1408 in those orders. See e.g. In re Ronald Singler (2007) DJDAR 5850, Case No. S150139; In re Masoner (2007) DJDAR
   12436, Case No. S144097.

"He showed very good insight into his commitment offense... Should this inmate at this time be given a parole or release date, his prognosis for being able to maintain his gains in the community is excellent... This inmate has not received any CDCR 115 violations during his entire incarceration... His behavior in prison during the last 18 years has always been described as exemplary. He has received over 30 laudatory chronos to date. Therefore it is felt that he would pose a less than average risk for violence when compared to this Level II inmate population. If released to the community, his violence potential is estimated to be no more than the average citizen in the community. The only risk factor, which would be a precursor to violence for this inmate, would be a return to substance abuse. However, he has been successful in avoiding any temptation of abusing substances while in prison... This inmate is confident and responsible for his behavior. He has the capacity to abide by institutional standards, has generally done so during his incarceration period. This inmate does not have a mental health disorder which would necessitate treatment either during his incarceration period or following parole." (Exhibit A, pp. 61-63, and Exhibit C, CDCR Staff Psychological Evaluation Report.)

11. Petitioner's substantial parole plans and letters of support (Exhibit A, pp. 23-34) which include post-parole residence and employment guarantees and other support, characterized by his CDCR Custody Counselor as "strong and intact," shows Petitioner lacks any history of unstable or tumultuous relationships with others.

12. Improperly discounting his 22+ years of exemplary prison record, his positive CDCR Psychological and Custody Counselor Evaluations (Exhibit B), his non-assaultive prior conduct, the Board denied Petitioner parole, based on the nature of his offense, declaring it was:

"Was carried out in an especially cruel, callous, heinous and atrocious manner... carried out in a dispassionate and calculated manner, in that the record reflects premeditation and preplanning of this murder. The victim was abused during the offense... The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering... The motive for the crime was very trivial in relationship to the offense... The crime was also committed for the purpose of robbery... You had failed to profit from society's previous attempts to correct your issues with drugs and criminality... That you have an unstable social history... That you were, and by your own admission, were addicted to alcohol and marijuana... That you have been convicted of murder-first, and as such it would not reasonable to expect that you be granted parole during the next two years. So as a result, we are going to deny you for two years." Exhibit A, pp. 75-77.

13. The record shows that at the previous three parole hearings the Petitioner received a one year denial, has continued his positive programming and fulfilled all the requirements set forth by the Board at each parole hearing, removing any reason for a two year denial period.

14. The Board noted:

"We took into consideration the most recent psychological report, which indicates – which is favorable of release. '**However, this Panel does not agree with this assessment.**' (Emphasis added). This particular report is dated January 3, 2003, prepared by Clinical Psychologist M.E. Carswell, in which it is the opinion of the psychologist that if released to the community his violence potential is estimated to be not more than the average citizen in the community. Sir, in terms of your parole plans, I do think that you

1    have very good parole plans on file. You have plans to live with your family in Diamond
2    Bar. You also have employment offers, and also a couple of organizations that you would
     volunteer with. The record also does reflect that you have developed some skill since
3    being incarcerated that would assist you in obtaining employment upon your release to
     parole, specifically in the areas of IT and Vocational Drafting, just to name a couple[.
4    But] the Panel makes the following findings, sir, and that is that you need to continue
     participating in whatever self-help and therapy programs that might be available within
5    the institutions in order to assist you in developing insight into why you committed the
     offense, 'in that it is the opinion of this Panel that your expressions of remorse are less
     than sincere, they are superficial, they exhibit little feeling and they are scripted, in my
6    view. That's my sense.' And until progress is made in this area, it is the opinion of this
     Panel that you will continue to be <u>unpredictable</u> and a threat to others.
7

8    Nevertheless, sir, we would like to take this opportunity to commend you for not having
     – for remaining disciplinary free throughout your entire incarceration, for the numerous
9    laudatory chronos in your file, and for your continued participation is self-help and
     programming within the institutions.
10

11       15. The panels statement of no remorse is without support, contrary to the record, and therefore

12   arbitrary.

13       16. Petitioner has served a sufficient exemplary term of imprisonment (22 years) such that his

14   offense factors no longer provide evidence he is a threat to public safety. (<u>In re Elkins</u> (2006) 144

15   Cal.App.4th 475, 498) The motive for the offense, while not excusable, has repeatedly been provided,

16   thus by definition it is not inexplicable or trivial. <u>In re Scott</u> (2004) 119 Cal.App.4th 877, 892-895. The

17   findings that Petitioner's prior criminal conduct and substance abuse substantiate parole denial also

18   violate governing case law. <u>In re Mark Smith</u> (2003) 109 Cal.App.4th 489, 504, <u>In re Cortinas</u>, <u>supra</u>

19   (2004) 16 Cal.Rptr.3d 271, 286.

20       17. There is absolutely no evidence in the record (as found by the Superior Court) that the victim

21   was beaten with a pipe until his "skull burst open." Reliance on colloquialism from a the CDC Staff

22   Psychological Evaluation (Exhibit C pg. 195, C2 pg. 203) during a previous Board hearing does <u>not</u>

23   constitute reliable evidence or any other type of evidence.

24       18. There is no evidence the blows to the victim were more in quantity or severity than that of

25   the crime in <u>In re Elkins</u>, <u>supra</u>, at 496-497, wherein the blows to the victim and the underlying motive –

26   robbery – were held to <u>not</u> be an impediment to parole and to no longer constitute a sufficiently callous

27   crime on which to rest a parole denial decision. Further, see <u>In re Lawrence</u> (2007) 150 Cal.App.4th

28

1  1511, 1557, 59 Cal.Rptr.3d 537, 571, wherein this court held "[p]remeditated first degree murders are

2  normally bloody events."

3        19. The Superior Court's finding that 'the motivation to obtain money" is materially less

4  significant than those which conventionally drive people to commit murder" is simply contrary to fact

5  law. Further, their reliance on In re Honesto (2005) 130 Cal.App.4th 81, 95, is misplaced. Honesto does

6  not make this holding. Honesto instead holds that it was trivial to select a victim for probable execution

7  because, as a store clerk he had refused to cash a check for Honesto's brother. In fact, this Appellate

8  court has found money as a motivation for murder does not, in itself, support parole denial. (In re Lee

9  (2006) 143 Cal.App.4th 1400. Also see In re Elkins (2006) 144 Cal.App.4th 475.) An economic as

10  opposed to an emotional motive does not render the motive trivial as it is commonplace (In re Lawrance

11  (2007) 59 Cal.Rptr.3d 537, 571.) However, the amount of money if it is sufficiently low may compel

12  such a finding. See In re Scott (2004) 119 Cal.App.4th 871, fn. 13 at 893, holding that due to underlying

13  motives, even a killing over 40 cents may not indicate a trivial motive, and certainly a killing over a

14  "large sum of money" cannot by any reasonable stretch of the imagination logically constitute a "trivial"

15  motive – regardless, the of money at issue herein was substantially more than the 40 cents Scott found to

16  be "very trivial in relationship to the offense." (Id. fn 13 at 893-894.)

17                                   **GROUND TWO**

18  **PETITIONER'S PLEA AGREEMENT WAS RENDERED CONSTITUTIONALLY**
    **INVALID WHEN THE BOARD AND THE DISTRICT ATTORNEY ACTED TO**
19  **ILLEGALLY    WITHHOLD    HIS    RECIPROCAL    BENEFIT    OF    LESSENED**
    **PUNISHMENT BY VIOLATING HIS 5TH AND 14TH AMENDMENT RIGHT TO DUE**
20  **PROCESS.**

21  **a.  Supporting Facts:**

22        1.  Petitioner entered into a plea agreement contract with the State's Executive, Exhibit G (See

23  e.g. Thompson v. Calderon (9th Cir. 1996) 86 F.3d citing, People v. Cimarusti (1978) 81 Cal.App.3d

24  314, 323,) and as offered by the District Attorney was contractually convicted of a 25 year to life type

25  first degree murder.

26        2.  When Petitioner accepted the state's offer to take responsibility for his crime by agreeing to

27  be punished for a 25 years to life type first degree murder he understood the state to would not punish

28  him for any dismissed counts or acts. At Petitioner's December 15, 2005 parole consideration hearing,

the attending Deputy District Attorney advocated that Petitioner's offense be considered as more serious than stipulated at plea, that Petitioner be punished for dismissed counts, that in effect his crime be considered one with special circumstances. Exhibit A, pp. 66-68.

3. The District Attorney violated the plea by arguing the offense circumstances, included dismissed or non-charged acts.

### PRAYER FOR RELIEF

Petitioner respectfully requests this Court find the statutory and case law premises on which his plea agreement was accepted and entered into have been violated by the actions of the District Attorney and the State's Executive Agency, the Board of Parole Hearings, and compel performance of his plea by finding as shown herein that since no evidence having the necessary indicia of reliability was available and considered during his hearing that demonstrates "he will [currently] pose an unreasonable risk of danger to society if released from prison," no evidence supports his parole denial; therefore, his continued imprisonment violates his state and federal right to due process depriving him of his liberty interest in parole, and order his release from prison.

# MEMORANDUM OF POINTS AND AUTHORITIES

## STANDARD OF REVIEW

Under state and federal due process standards of review, the fact there is "some evidence" prisoner's commitment crime was both committed and committed a certain way at a certain time does not mean that crime necessarily represents "some evidence" a prisoner's release on parole will pose and unreasonable risk of danger to the public, especially in light of a record showing the appearance of rehabilitation and a psychological evaluation findings that on release he would pose no greater threat than the average citizen. In other words, the test is not whether "some evidence" supports the Board's reasons for parole denial, but whether "some evidence" indicates a prisoner's release unreasonably endangers public safety, as required by Penal Code §3041. (See In re Lawrence (2007) 150 Cal.App.4th 1511, 1540-1544.)

### I.    DUE PROCESS IS VIOLATED WHEN THE STATE RELIES ON THE PREDICTIVE VALUE OF OFFENSE FACTS TO DENY PAROLE 20+ YEARS AFTER A CRIME OCCURRED.

Multiple state and federal court decisions have recently held that the reliability associated with using crime circumstances to predict the possibility of future offense occurrences not only diminishes significantly after 10 years, when approaching twenty years, that predictability becomes nil to the point of uselessness, especially given a long term positive prison programming record. (See e.g. In re Lee (2006) 143 Cal.App.4th 1400, 1412, 49 Cal.Rptr.3d 931, 939, holding "Simply from the passing of time, [Petitioner's] crime[], [which occurred] almost 20 years ago ha[s] lost much of [its] usefulness in foreseeing the likelihood of future offenses than if he had committed them five or ten years ago[,]" relying on "In re Scott (2005) 133 Cal.App.4th 573, 595, 34 Cal.Rptr.3d 905 [past crimes value for predicting future crime diminished over time].)" (Lee, Ibid.) The parole matter in question in Lee, and the Board hearing results being appealed in this matter occurred numerous years following the parties arrest for committing their respective offenses, for Lee 17 years, for Petitioner 22+ years. In the Lee matter one victim was killed and the other survived after being shot twice. (Lee at 1404.) In Petitioner's case a single victim was killed. Both Lee and this Petitioner had no significant prior criminal history[ and] acknowledged [their] guilt by entering into a plea bargain that sent [them] to prison for an indeterminate years to life sentence. (Lee at 1406, Petitioner's Exhibits A and G) further both have "had

1  a spotless prison discipline record" with Lee having had one minor violation for smoking in 1998," and

2  Petitioner having had no violations. Both Lee and this Petitioner "improve[d themselves] by taking

3  education[al] classes [in prison.]" (Lee, Id., Petitioners Exhibit's A, B, C, H, and I.) further "Every

4  prison psychologist [who] evaluat[ed Lee of this Petitioner] found [both] posed little or no danger to

5  public safety if released." (Lee at 1406. Petitioners Exhibit C) while recognizing the seriousness of h is

6  offense, given his disciplinary free and overall very positive prison programming record. As recognized

7  by all the experts, as in the Lee case, after 22+ years, the nature of this Petitioner's offense has lost all of

8  its usefulness as a predictor of the likelihood of his committing future crimes. (Lee at 1412.) In fact, this

9  same type finding was made post – Lee in In re Elkins (2006) 143 Cal.App. 475, 30 Cal.Rptr.3d 503, in

10  a case where Petitioner Elkins murdered the victim through repeated blows to his head with a baseball

11  bat during a robbery, then disposed of his body in a hidden location. Elkins was convicted of first degree

12  murder and robbery, with use of a deadly weapon and sentenced to 25 years to life. (Id. at 504-505.) In

13  this offense, similar to Petitioners, the court held the [State] could not rely on the brutality of the crime

14  to deny parole, because Elkins' actions could not be considered "more aggravated or violent than the

15  minimum necessary to sustain a conviction for that offense." Id. at 496, citing Scott II, supra, 133

16  Cal.App.4th at 598.

17       In both Lee and Elkins, the court held that the test is not whether some evidence supports the

18  reasons the Board used to deny parole, but whether the evidence shows the prisoner is currently a threat

19  to society. Both case decisions held that sometime between 10 to 20 years, and certainly after 20 years,

20  crime circumstances no longer provide that nexus (Lee at 1409, Elkins at 500.) As a matter of note Lee's

21  writ was originally denied by the superior and appellate courts, but effectively ordered reheard by the

22  State Supreme Court, resulting in application of a constitutionally more acceptable vision of the

23  Dannenberg standards.

24  **II.   THE EVIDENCE USED BY THE BOARD TO DENY PETITIONER
PAROLE FAILED TO SATISFY THE RELIABILITY STANDARD
25  NECESSARY TO SUPPORT A PAROLE DENIAL DECISION
RENDERING THEIR DECISION ARBITRARY AND CAPRICIOUS.**

26

27       "Section 3041 of the California Penal Code creates in every inmate a cognizable liberty interest

28  in parole which is protected by the procedural safeguards of the Due Process Clause [Citations]… [and]

1   the due process protections of the California Constitution. Th[is] liberty interest is created, not upon

2   grant of parole, but upon the incarceration of the inmate." Biggs v. Terhune (9th Cir. 2003) 334 F.3d

3   910, 914-915. McQuillion v. Duncan (9th Cir. 2002) 306 F.3d 895, 903. Therefore, not only must

4   "'some evidence' support the [Board's] decision…, [that] evidence… must have some indicia of

5   reliability." Biggs v. Terhune, Ibid., citing McQuillion, 306 F.3d at 904; Jancsek v. Oregon Board of

6   Parole (9th Cir. 1987) 833 F.2d 1389, 1390 [adopting the "some evidence" standard set forth by the

7   Supreme Court in Superintendent v. Hill (1985) 472 U.S. 445, 456. (Sass v. Cal. Board of Prison Terms

8   (9th Cir. 2006) 461 F.3d 1123, 1127-1128.)

9   .        In Biggs v Terhune, supra, a case with situational factors and a prison performance record

10  analogous to the one in this case, the Court held that when a prisoner such as Petitioner has behaved in a

11  criminal and disciplinary free manner over a long period of time a Board finding that he has an

12  escalating pattern of criminal history relying solely on pre-prison conduct would not satisfy the

13  necessary indicia of reliability and thus would be devoid of evidence. (Id at 916.) Biggs also held that

14  when a prisoner has engaged in rehabilitation type programming such as self-help groups, vocational

15  and educational courses, etc… for that extended period of time during which time they remained

16  disciplinary free, the Board cannot find that his gains are recent because the evidence demonstrates

17  otherwise. (Id. at 917.) Logical analysis and court findings which equally apply to Petitioner's very

18  similar prison and offense degree situation, rendering void the Board panel's findings in this case that

19  Petitioner is currently a danger to society because of an alleged escalating pattern of criminal history, an

20  alleged criminal conduct based history of unstable relationships with others, and a need to demonstrate

21  the ability to cope with stress in a non-destructive manner by participating in further self-help to be

22  parole suitable. Biggs also addressed the Board's use of unchanging offense factors as a reason to deny a

23  prisoner parole after their initial consideration, holding such action would violate their federal

24  constitutional right to due process and deprive them of their federally protected liberty interest if they

25  had a lengthy history of disciplinary free and positive prison behavior, such as in this case.

26          Concerning use of crime factors and pre-conviction criminal history as a reason to support parole

27  denial, in Biggs v Terhune, supra, at p. 916-917, the Court specifically held that:

28

"[While] the [California] parole board's sole reliance on the gravity of the offense can initially be justified as fulfilling the requirements set forth by state law [in that first degree murder case], ...over time should [the Petitioner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense... would raise serious questions involving his liberty interest in parole.... A continued reliance in the future on unchanging factors, the circumstances of his offense and conduct prior to imprisonment runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."

In fact, in interpreting the rules in <u>Biggs</u>, even if the crime may be considered egregious, it is obvious that only the first denial may be based exclusively on the immutable facts of the crime to be consistent with federal due process principles, and **any subsequent denial** requires the presence of in-prison behavior showing that the inmate **currently** presents an unreasonable risk of danged if paroled. It is beyond logical dispute but that this is the correct rule. To rule otherwise puts the inmate in an impossible situation, where no matter what he shows in terms of positive behaviors, self-help, work skills, parole plans, or just rehabilitation in general, he would never be able to overcome the facts of the crime, since they will never change. Here, Petitioner has been before the board now five (5) separate occasions, only to have the 2005 Board panel again deny him parole, without any demonstration that Petitioner's current behavior demonstrates that he **still presents an unreasonable risk at this time**. What this recognizes is what the Ninth Circuit in <u>Biggs</u> alluded to when it talked of the rehabilitative goals of the system, and the need to take into consideration that a person can change. (See <u>Hayward v. Marshall</u>, <u>supra</u>, 2008 Lexis 40.)

### III.   PETITIONER'S PRIOR CRIMINAL AND SOCIAL CONDUCT DOES NOT RISE TO THE LEVEL OF EGREGIOUSNESS REQUIRED TO SUPPORT A PAROLE DENIAL DECISION.

The Board's finding that Petitioner has an escalating pattern of criminal conduct based on a single marijuana possession conviction and a history of unstable relationships with others because of his pre-commitment offense occasional use of illegal substances as findings supporting parole denial fails the test mandated by their own regulations, 15 CCR §2402(c)(2) and 15 CCR §2402(d)(1), contradicts governing case law in <u>In re Mark Smith</u> (2003) 109 Cal.App.4th 489, 504-505, holding "Although 'a previous record of violence' (meaning an attempt to serious injury or other assault behavior) is a circumstance tending to establish unsuitability for parole (15 CCR §2402(c)(2); <u>In re Rosenkrantz</u>, <u>supra</u>), there is nothing in the governing statutes or regulations to support the [Board's] reliance [herein]

on [Petitioner's] non-violent criminal record. Here the record shows that [Petitioner] has never been convicted of a [prior] violent offense (either as a juvenile or an adult)." The Board's finding also ignores the due process violation that would result from basing subsequent parole denials on prior conduct, when as in this case the prisoner has an "exemplary" prison behavior record (Biggs, supra, at pp. 916-917.) There is no evidence that Petitioner has had an unstable tumultuous relationship with others. Additionally, the Board cannot find a prisoner's pre-commitment behavior or crimes as facts supporting an unacceptable parole risk solely for punitive purposes when the evidence clearly fails to show those events reflect his present state of mind. (In re Rosenkrantz, (2000), 80 Cal.App.4th, 409, 426, citing Dunn v. United States Parole Com'n (10th Cir. 1987) 818 F.2d 742, 745.)

**IV.    UNDER CALIFORNIA'S PAROLE SCHEME, PAROLE MUST NORMALLY BE GRANTED TO AN APPEARING PRISONER UNLESS THE EVIDENCE DEMONSTRATES THEY CURRENTLY POSE AN UNREASONABLE RISK OF DANGER TO SOCIETY IF RELEASED FROM PRISON, OTHERWISE THEY WILL ARBITRARILY BE DEPRIVED OF THEIR FEDERALLY PROTECTED LIBERTY INTEREST.**

Since California's parole PC §3041 scheme creates a federally protected liberty interest and "'a presumption that parole release will be granted' unless the statutorily defined determinations are made", (McQuillion v. Duncan, 306 F.3d 895, 902 quoting Board of Pardons v. Allen (1987) 482 U.S. 369, 378), the Board's parole denial decision must be supported by some evidence which establishes a prisoner is not rehabilitated and is currently a threat to public safety. There must be a nexus between the evidence noted and the Petitioner's current state of mind and behavior pattern. (In re Lee (2006) 143 Cal.App.4th 1400, 1408, In re Elkins (2006) 143 Cal.App. 475, In re Lawrence (2007) 150 Cal.App.4th 1511, Rosenkrantz, supra, 80 Cal.App.4th at p. 426 citing Dunn v. U.S. Parole Com'n. (10th Cir. 1987) 818 F.2d 742, 745.) Evidence which fails this test lacks an indicia of reliability and thus fails to satisfy the minimum necessary due process. (Biggs v. Terhune, supra, at pp. 914-917.)

**V.    CHARACTERIZING THE NATURE OF A PLED TO OFFENSE AS INCLUDING CRITICAL ELEMENTS NOT CONSTITUTING THE NATURE OF THE ADMITTED CRIME CONSTITUTES PREJUDICIAL ERROR.**

Petitioner pled guilty to one count of first degree murder, accepting the District Attorney's offer that "the special circumstances [allegation] were to be stricken" and the "robbery" count "dismissed."

1   Upon motion by the district attorney, the Court approved those terms, i.e. granted the motion. See

2   Exhibit G, Petitioner's July 10, 1984, plea sentencing transcript, p. 4: 15-23.

3        The trial record must indicate an offender received real notice of the nature of the charge against

4   him to which he pled guilty. (Marshall v. Loneberger (1983) 459 U.S. 422, 436, 74 L.Ed.2d 646, 660,

5   103 S.Ct. 843, citing and relying on Henderson v. Morgan (1976) 426 U.S. 637, 647, 49 L.Ed.2d 108,

6   115-116, 96 S.Ct. 2253.) A notice Henderson held to necessarily include an enumeration of the elements

7   of that charged offense. (Id. at 640-643, 49 L.Ed.2d at 115-116.) The trial record at plea in this case is

8   clear. The count of robbery and the special circumstance allegation against Petitioner were dismissed,

9   obviously to preclude his being punished for either count. "It is true that a plea of guilty is deemed to

10  constitute a judicial admission of every element of the offense charged. (People v. Chad (1981) 28

11  Cal.3d 739, 748, 170 Cal.Rptr, 798.) But that admission acknowledges only the commission of the

12  offense as charged, not as it might have been charged. California courts have long held that a plea of

13  guilty to an accusatory pleading admits only such allegations as are actually charged. (See In re Tartar

14  (1959) 52 Cal.2d 250, 256-257, 339 P.2d 533, People v. James (1978) 88 Cal.App.3d 150, 161, 151

15  Cal.Rptr. 354.) Where a crime can be committed in a variety of ways and only one of those ways has

16  been pled, a plea of guilty does not admit that the offense was committed in all of the possible statutory

17  ways. …[W]hen the prosecutor [elects] to charge different statements of the same offense, the defendant

18  can be convicted by his plea only by the crime as it is actually plead." (People v. Jerome (1984) 160

19  Cal.App.3d 1087, 1096-1097, 207 Cal.Rptr. 199, 204-205.) Petitioner pled to first degree murder

20  wherein the allegations of special circumstances and its underlying robbery count were dismissed. (See

21  Exhibit G, Ibid.)

22       In California, "[a] negotiated plea agreement is a form of contract, and is interpreted [by the

23  court] according to general contract principles. (Citations.) The fundamental goal of contractual

24  interpretation is to give effect to the mutual intent of the parties …The mutual intent to which the courts

25  give effect is determined by objective manifestations of the parties intent including the words used in the

26  agreement…." (People v. Shelton, 37 Cal.4th, 759, 767.) Words clearly denoting the parties intent

27  Petitioner would not be punished for the contractually dropped special circumstances allegations and the

28  dismissed robbery count. (Exhibit G, p.4.)

1    The question remaining is who are the parties to a plea accepted by an offender, approved by the

2    Court, and offered by a Deputy District Attorney, as in this case. (Exhibit G.) The State's "executive

3    parole agency[,] ...an arm of the Department of Corrections, now know as the Board of P[arole

4    Hearings]" (In re Dannenberg (2005) 34 Cal.4th 1034,1078) repeatedly contends it is not a party to a

5    plea agreement. However, governing law which holds that all state governmental entities, such as offices

6    (e.g. the district attorney's), departments (e.g. the Department of Corrections), Boards (e.g. parole

7    boards), officers, agencies, etc. are merely "incarnations of the same entity, the State of California.

8    [Therefore,] the real party [to a plea contract] is not the District Attorney, but the State in whose name

9    he invokes judicial process. (People ex rel Mosk v. Barrenfeld (1962) 203 Cal.App.2d 166, 175, 21

10    Cal.Rptr 501.) [Concurrently, a] department [, in this case – the Department of Corrections,] is not a

11    separate entity rather it is an administrative segment of the state government.... [It] has no interest apart

12    from [its] obligation to administer state law." (People v. Department of Housing & Community

13    Development (1975) 45 Cal.App.3d 185, 119 Cal.Rptr. 266, 274) The Department [of Corrections and

14    its arm, the Board of Parole Hearings] is not an entity separate from the State, rather it is an

15    administrative segment of the state government. (Ibid.) Therefore, the Department of Corrections' Board

16    of Parole Hearings is not only bound by a prosecutor's (district attorney's) promises at plea (Giglio v.

17    United States, supra, 450 U.S. 150, at 154), that Board, an incarnation of the state is bound by the law

18    requiring it determine the objective intent of a plea using it's words, and as the law holds, to accordingly

19    construe, enforce, that plea contract. (People v. Shelton, supra, 37 Cal.4th at 767.) They must honor the

20    obligations of the State, of which they are merely an entity, and administer it's agreements as defined by

21    law. (People v. Department of Housing, Id. at 274.)

22    However, in this case the Board, an arm of the Department of Corrections, contrarily and

23    impermissibly acted as an entity independent of the State, as though they were not merely an incarnation

24    of the State, and added the dismissed count of robbery and dropped charge of special circumstances

25    back into his crime, then denied his parole. (See Exhibit A.) That State recharacterization of the pled to

26    crime constituted prejudicial error under the mandate of Henderson v. Morgan, supra, 426 U.S. at 647,

27    requiring Petitioner's acceptance of the plea being rendered involuntary (Ibid.), compelling its specific

28    performance.

1

## CONCLUSION

2      Based on the foregoing it is clear the Board's decision to repeatedly deny Petitioner parole was

3   arbitrarily rendered without supporting evidence having an indicia of reliability, and in disregard of his

4   plea agreement. Accordingly, Petitioner respectfully requests his writ be granted.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Robert Hudson C89346
P.O. Box 689, G328L
Soledad, CA 93960-0689

RECEIVED

MAR - 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA



Office of the Clerk, U.S. District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, California  94102

**Priority Mail**

**LEGAL MAIL**